IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 2:05-CR-121-DAE-RJJ-1 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT DAVID KAHRE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER: (1) GRANTING RECEIVER'S MOTION FOR ORDER
AUTHORIZING SALE OF PERSONAL PROPERTY BY PRIVATE SALE;
(2) GRANTING RECEIVER'S MOTION TO AMEND ORDER GRANTING
GOVERNMENT'S MOTION TO APPOINT RECEIVER; AND
(3) GRANTING IN PART AND DENYING AS MOOT IN PART RECEIVER'S
MOTION FOR ORDER APPROVING/AUTHORIZING PAYMENT OF
RECEIVER'S FEES AND EXPENSES FOR THE PERIOD DECEMBER 14,
2011 THROUGH MARCH 31, 2013 AND FOR ORDER APPROVING
<u>RECEIVER'S FIRST INTERIM STATUS REPORT</u>

On May 16, 2014, the Court heard argument on three motions filed by

Receiver Robb Evans & Associates ("Receiver"), including: (1) a Motion for

Order Authorizing Sale of Personal Property by Private Sale (Dkt. # 2815); (2) a

Motion to Amend Order Granting Government's Motion to Appoint Receiver (Dkt.

# 2816); and (3) a Motion for Order Approving/Authorizing Payment of Receiver's

Fees and Expenses for the Period December 14, 2011 through March 31, 2013 and

1

for Order Approving Receiver's First Interim Status Report (Dkt. # 2840).  Shlomo Sherman, Esq., appeared at the hearing on behalf of Receiver; Lisa Rasmussen, Esq., appeared at the hearing on behalf of Defendant Robert David Kahre ("Defendant" or "Kahre").  Upon careful consideration of the Motions and the supporting and opposing memoranda, the Court **GRANTS** the Motion for Order Authorizing Sale of Personal Property by Private Sale; **GRANTS** the Motion to Amend Order Granting Government's Motion to Appoint Receiver; and **GRANTS IN PART AND DENIES AS MOOT IN PART** the Motion for Order Approving/Authorizing Payment of Receiver's Fees and Expenses for the Period December 14, 2011 through March 31, 2013 and for Order Approving Receiver's First Interim Status Report.

BACKGROUND

On November 20, 2007, the United States filed a Third Superseding Indictment ("TSI") against Defendant, various family members, and other associates of his business.  ("TSI," Dkt. # 1671.)  The TSI charged Defendant with Conspiracy to Defraud, in violation of 18 U.S.C. § 371 (Count 1); Willful Failure to Collect and Pay Over Tax, in violation of 26 U.S.C. § 7202 (Counts 2–50); Attempts to Interfere With the Administration of the Internal Revenue Law, in violation of 26 U.S.C. § 7212(a) (Counts 51, 56); Attempts to Evade or Defeat

Tax, in violation of 26 U.S.C. § 7201 (Counts 52–55); and Wire Fraud, in violation of 18 U.S.C. § 1343 (Count 59). (Id.)

On August 14, 2009, following a 48-day trial, the jury returned a verdict finding Defendant guilty on Counts 1, 2–50, 51, 52–55, 56 and 59 of the TSI. (Dkt. ## 2520, 2558.) On November 17, 2009, Defendant was sentenced to a term of imprisonment of 190 months and ordered to pay restitution in the amount of $16,060,104.72 to the Internal Revenue Service and a special assessment in the amount of $5,700.00. (Dkt. # 2606.) A Judgment to that effect was entered on December 3, 2009. (Dkt. # 2615.) Defendant subsequently filed a Notice of Appeal of his conviction and sentence on November 19, 2009. (Dkt. # 2602.)

On February 23, 2011, the Government filed a Motion to Appoint Receiver. (Dkt. # 2779.) Defendant Kahre opposed the Motion, arguing that a receiver violated the Double Jeopardy Clause, any appointment would be prohibited given the pending appeal, and the appointment would consume funds that would otherwise go to Defendant's creditors. (Dkt. # 2786.) On December 14, 2011, the Court rejected Defendant's arguments, granted the Government's Motion, and appointed Robb Evans & Associates ("Receiver") as Receiver given that Robb Evans had substantial experience acting as a receiver in cases involving claims by the United States and assets located in multiple jurisdictions. ("Order," Dkt. # 2809 at 13.)

The Court charged Receiver to "conduct an investigation for the purpose of identifying and locating all Assets and Documents of, or in possession, custody, or under the control of, the Receivership Defendant, wherever situation," and that "[u]pon identification of all Assets and Documents, the Receiver shall file a request with the Court to have said Assets and Documents apply toward the Restitution Judgment entered against the Receivership Defendant." (Id. at 16.) Upon receipt of Receiver's request, the Court would then determine whether the assets are under the control of Defendant and then whether the assets should apply to the Restitution Judgment. (Id. at 17.) Thereafter, the Court would issue an order directing and authorizing Receiver to

    a.    Take exclusive custody, control and possession of all said Assets and Documents, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all Assets and Documents of the Receivership Defendant and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendant. The Receiver may employ the assistance of law enforcement officers as the Receiver deems necessary to implement the provisions of this Order. The Receiver may take all steps necessary to secure existing business premises of the Receivership Defendant. Such steps may include, but are not limited to, securing the locations by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at the locations;

    b.    Conserve, hold, and manage all receivership Assets, and perform all acts necessary or advisable to preserve the value of those Assets, in order to prevent any irreparable loss, damage,

> or injury to consumers or to creditors of the Receivership Defendant, including, but not limited to, obtaining an accounting of the Assets and preventing transfer, withdrawal, or misapplication of Assets, and including the authority to liquidate all Assets and close out any open securities or commodity futures positions of the Receivership Defendant . . . .

(Id. at 17–18.)

The Court's Order also specified how Receiver would be compensated for his duties:

> The Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by or in the possession, custody, or control of, or which may be received by, the Receivership Defendants.
>
> The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

(Id. at 22.)

On February 15, 2012, Receiver filed a Motion for Order Authorizing Sale of Personal Property by Private Sale that is currently before the Court. (Dkt. # 2815.) On March 5, 2012, Defendant filed a Response. (Dkt. # 2817.) On March 12, 2012, Receiver filed a Reply. (Dkt. # 2819.)

On February 29, 2012, Receiver filed a Motion to Amend Order Granting Government's Motion to Appoint Receiver that is also currently before the Court. (Dkt. # 2816.) On March 5, 2012, Defendant filed a Response. (Dkt. # 2818.)

On May 9, 2013, Receiver filed a Motion for Order Approving/Authorizing Payment of Receiver's Fees and Expenses for the Period December 1, 2011 through March 31, 2013 and for Order Approving Receiver's First Interim Status Report. (Dkt. # 2840.) On May 23, 2013, Defendant filed a Response. (Dkt. # 2847.)

On December 5, 2013, the Ninth Circuit Court of Appeals affirmed the judgment of this Court and thus affirmed Defendant's convictions and sentence. (Dkt. # 2849; United States v. Kahre, 737 F.3d 554, 583 (9th Cir. 2013).) On February 6, 2014, the Ninth Circuit denied Defendant's Petition for Rehearing En Banc. (Dkt. # 2852.)

DISCUSSION

I. Motion for Order Authorizing Sale of Personal Property by Private Sale

Receiver requests that this Court issue an order authorizing him to sell Defendant's "Gold and Silver Coins valued at $27,417.60," as identified in this Court's Order. (See Order at 5.) Specifically, Receiver seeks to sell 64 one-ounce gold coins, 633 one-ounce silver coins and 6 ten-ounce silver bullion pieces, to the

6

highest offeree by private sale. (Dkt. # 2815 at 3–4.) Receiver notes that it is receiving quotes from a local coin dealer, Sahara Coins, and a large coin dealer in California, California Numismatic Investments, and that it intends to sell the coins to the dealer that provides the better quote. (Id. at 4.) Receiver avers that Sahara Coins wishes the buy the gold coins $16.50 <u>over</u> the current trading price and the silver coins at $.01 <u>over</u> the current trading price. (Id. at 3; id., Ex. 2 (February 14, 2012 email from Raymond Bryant, General Manager of Sahara Coins).)

Defendant does not necessarily oppose such a sale, but argues that Receiver's Motion estimating the coin's value at $27,417.60 is a grossly incorrect statement of value of the gold and silver coins at issue and that such a valuation prejudices him. (Dkt. # 2817 at 1–2.) However, Defendant's argument misses the mark because the $27,417.60 figure quoted from the Order was only to identify Defendant's gold and silver coins. Receiver did not indicate any intention of selling the coins for such a price. In fact, Receiver made clear that it intended to sell the coins above the appraised value by attaching an email from Sahara Coins indicating that Sahara Coins would buy the gold coins $16.50 over the current trading price value and would buy the silver coins $.01 over the current trading price.

Accordingly, the Court **GRANTS** Receiver's request to sell the gold and silver coins to the highest bidder for the benefit of Defendant's restitution judgment.

II.  Motion to Amend Order Granting Government's Motion to Appoint Receiver

Receiver's next Motion requests that the Court amend its earlier Order, specifically, the provision providing that "Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order." (Dkt. # 2816 at 3 (quoting Order at 22).) Receiver contends that because its fees and costs within the first 60 days of the Order totaled less than $600, it believed that filing a request within the first 60 days would be "wasteful given the minimal amount of the fees incurred and the costs expended." (Id.) Therefore, it asks that the Order be amended to require Receiver's first request for payment of reasonable compensation to be filed on or before June 14, 2012. (Id.) Defendant does not oppose Receiver's request.[1] (Dkt. # 2818 at 2.)

---

[1] Although Defendant does not oppose Receiver's request, Defendant reurges his opposition to the receivership by arguing that Receiver's Motion to Amend is a "just the sort of useless expenditure Mr. Kahre was concerned about." (Dkt. # 2818 at 2.) This Court has already addressed Defendant's fiscal concerns in its earlier Order authorizing the receivership. (See Order at 10 (holding that "while the Government may have legal remedies to secure Defendant's assets, the

8

Given that Defendant does not oppose Receiver's request, the Court **GRANTS** Receiver's Motion to Amend Order Granting Government's Motion to Appoint Receiver (Dkt. # 2816).

III. Motion for Order Approving/Authorizing Payment of Receiver Fees and Expenses

Receiver next requests that the Court approve and authorize payment of Receiver's fees from December 14, 2011 through March 31, 2013 and that the Court approve Receiver's First Interim Status Report, including Receiver's recommendations for liquidating additional assets of Defendant. (Dkt. # 2840 at 1.) Both of Receiver's requests will be addressed in turn.

A. Receiver's Fees and Expenses

Receiver seeks approval and authority for payment of the fees and expenses incurred by Receiver's staff and Receiver's counsel, Kolesar & Leatham ("K&L"). (Id. at 4.) It requests a total amount of $55,648.50, constituting: (1) $37,774.66 on account of the fees of the Receiver and its staff; (2) $469.94 on account of Receiver's costs; (3) $16,145.00 on account of the fees of Receiver's counsel, K&L; and (4) $1,259.30 on account of K&L's costs. (Id.) According to Receiver, such expenses have accrued as a result of its activities, including: addressing administrative issues regarding the receivership estate, filing a motion

---

appointment of a receiver is the most effective and efficient way to enforce the Judgment against Defendant").)

9

for authorization to sell precious metals belonging to Defendant, and exploring legal options for gaining control and possession of certain real property identified in the Court's order authorizing the receivership. (Id. at 4–5.) Additionally, Receiver avers that its counsel, K&L, has assisted Receiver in each of Receiver's activities by analyzing and advising on various legal issues. (Id. at 5.)

Defendant first argues that such fees and costs are unnecessary and excessive. (Dkt. # 2847 at 4.) He "repeats his objection" that a Receiver is unnecessary because the United States and IRS are capable of carrying out the actions necessary to pursue the rights and alleged property interests the government seeks to assert. (Id.)

As noted above, the Court has previously addressed Defendant's concerns in its previous Order, finding that

> [W]hile the Government may have legal remedies to secure Defendant's assets, <u>the appointment of a receiver is the most effective and efficient way to enforce the Judgment against Defendant</u>. Defendant's purported assets are spread across several states. And since those assets appear to be insufficient to satisfy the claims of all of Defendant's creditors, multiple claimants will seek recovery from the same assets. Under these circumstances, the Court finds that the appointment of a receiver will best secure the most speedy and perfect administration of justice and the rights of the parties interested in the property.

(Order at 10 (internal citations and quotation marks omitted) (emphasis added).) Because the Court has already rejected Defendant's "unnecessary" argument

regarding the efficacy and utility of the receivership in its previous Order, it will not entertain Defendant's recurring argument by repeating its earlier analysis.

Defendant also contends that Receiver's Motion for Order Authorizing Sale of Personal Property by Private Sale (Dkt. # 2815) negligently misstated the value of the precious metals and Receiver's Motion to Amend Order Granting Government's Motion to Appoint Receiver (Dkt. # 2816) was a waste of resources that should have been used to pay his restitution obligation. (Id. at 5.)

However, both of Defendant's contentions lack merit. As stated above, Receiver's reference to "Gold & Silver Coins valued at $27,417.60" was purely for identification purposes. Moreover, requesting an extension of time through a Motion to Amend Order is not a "waste of resources" as Defendant complains. To the contrary, it would have taken additional and superfluous resources to compile reports on a 60-day basis if such reports had little information, if anything, to convey to the Court.

Defendant's last argument that Receiver is not entitled to the $55,648.50 fee award asserts that Receiver's activities of reviewing records and exploring legal options in gaining control over Defendant's assets is superfluous because "the status of the properties and the relevant law involved was described in detail in [Defendant's] filings" and "almost nothing has been carried out in relation to the property at issue." (Id.) As a result, Defendant proposes that Receiver's and

11

K&L's rates be capped at the rate received by attorneys appointed to represent criminal defendants: $125 per hour. (Id.)

A court appointing a receiver has full power to fix the compensation of such receiver and the compensation of the receiver's attorneys. In re Alpha Telecom, Inc. ("Alpha Telecom II"), No. 03:01-cv-1283-PA, 2013 WL 840065, at *16 (D. Or. Mar. 6, 2013) (citing Drilling & Exploration Corp. v. Webster, 69 F.2d 416, 418 (9th Cir. 1934)). In fact, "if a receiver reasonably and diligently discharges his duties, he is entitled to fair compensation for his efforts." SEC v. Elliott, 953 F.2d 1560, 1577 (11th Cir. 1992); Walton N. Moore Dry Goods Co. v. Lieurance, 38 F.2d 186, 191 (9th Cir. 1930) ("It is well established that the compensation allowed a receiver must be reasonable . . . .").

The compensation calculus is comprised of many factors including: the fair value of the receiver's time, and its labor and skill as measured by conservative business standards; the degree of activity, integrity, and dispatch with which work is conducted; the economy of administration; the burden the estate may safely bear; the amount of time required to perform those necessary services, and the results obtained. See, e.g., In re Imperial '400' Nat'l, Inc., 432 F.2d 232, 237 (3d Cir. 1970); United States v. Code Prods. Corp., 362 F.2d 669, 673 (3d Cir. 1966). Ultimately, a receiver's fees must be considered reasonable. See In re San Vicente Med. Partners, Ltd., 962 F.2d 1402, 1409 (9th Cir. 1992); see also 77

C.J.S. Receivers § 480 (2013) (reminding that the amount of compensation should be reasonable and also sufficient "to induce competent persons to serve as receiver or to render other essential services").

Defendant's first argument, namely that any time Receiver spent reviewing records and exploring legal options should not be compensated because Defendant already described the status of the properties in his response to the Government's Motion to Appoint Receiver (Dkt. # 2786), is without merit. Receiver was not obligated to take Defendant's word regarding the financial status of the properties. In fact, Defendant's earlier assertion that he has no interest in the Oregon property (Dkt. # 2786 at 3–4) was belied by Receiver's finding that "Defendant took an active role in selecting and purchasing the Oregon Property," "[Defendant] sent a letter to Roger Goodman [with Century 21 Eagle Cap Realty] instructing the title company that the title was to be put in the names of Danille Cline, Myra Wellman, and Lori Rasmussen as tenants in common," "[Defendant] stated that he would be 'acting as an advisor' and that all verbal communications were to go through him," and "Defendant made the down payment on the Oregon property, as well as the ongoing purpose-money mortgage payments" (Dkt. # 2840, Ex. 1 at 3–4). Receiver believes that despite the fact that Defendant's name is not listed on the deed, he effectively possessed sufficient interest to warrant applying the proceeds of the Oregon property to the Restitution Judgment. (Id. at 4.)

Defendant's second argument, wherein he posits that little has been done with the properties to merit the $55,648.50 fee award, is similarly unpersuasive. Receiver's First Interim Report explains that there has been little benefit to Defendant's Restitution Judgment because the properties at issue have insufficient equity to merit pursuing a sale. For example, with regard to the Utah Property, Receiver obtained opinions of value from local brokers in St. George, Utah and determined that the estimated value of the Utah Property was $725,000. (Id. at 2.) Receiver requested a payoff demand from the mortgage company, America's Wholesale Lender, which confirmed that the payoff amount was $737,174.131. (Id.) Because the payoff amount exceeded the property's value, "Receiver determined that there was not equity in the Utah Property and decided to abandon any potential interest." (Id.) With regard to the Nevada Property, Receiver found that the property had been purchased for $89,953.55, but is currently valued at $25,000 because the building that was on the lot was demolished after purchase. (Id.) Receiver also determined that there were no financial records, bank documents, or escrow documents regarding the Nevada Property. (Id.) Receiver concluded that because of "the questionable value of the property, the Receiver does not believe it is in the best interest of the Receivership Estate to expend additional resources investigating the source of funds or for the litigation costs to attempt to perfect a claim." (Id. at 3.)

The Court finds that $55,648.50 in receivership fees is reasonable. As detailed in its First Interim Report, Receiver has thoroughly investigated the status of the properties listed in the Court's Order to determine whether they can (or should) be sold to satisfy Defendant's Restitution Judgment. (See Dkt. # 2840, Ex. 1 at 1–5.) Receiver's billing statements reflect that it has diligently reviewed the records provided by the United States Attorney's Office and the IRS regarding Defendant's relationships to the properties, as well as independently investigated the properties' mortgages, conveyances, and current valuation. (See Dkt. # 2840, Ex. 2.) Additionally, billing statements from Receiver's counsel, K&L, reveal that it has assisted Receiver in many of the legal impediments surrounding the properties, including preparing memoranda on the conveyances and title issues surrounding the Oregon Property. (See Dkt. # 2840, Ex. 3.) While these properties have not inured to the benefit of Defendant's Restitution Judgment at this time, Receiver took the necessary steps to determine if such properties would benefit the Judgment. Its fees should not be reduced solely because of the diminished value of the properties and the legal impediments regarding Defendant's interest in the properties (many of which were occasioned by Defendant's attempts to convey his interest). Rather, Receiver should be reasonably compensated for its due diligence.

Accordingly, the Court **GRANTS** Receiver's Motion for Fees and

**ORDERS** that Receiver collect $55,648.50 from the receivership estate, to wit: (1) $37,774.66 on account of the fees of the Receiver and its staff; (2) $469.94 on account of Receiver's costs; (3) $16,145.00 on account of the fees of Receiver's counsel, K&L; and (4) $1,259.30 on account of K&L's costs.

  B. <u>First Interim Report and Recommendations</u>

  Receiver next seeks the Court's approval of its First Interim Status Report, including its recommendation for an order authorizing it to utilize "certain legal tools available to the United States of America for recovering property utilized in connection with a violation of the Internal Revenue Code . . . including without limitation, the provisions of 26 U.S.C. § 7302 and 7403." (Dkt. # 2840 at 5.) Receiver argues that 26 U.S.C. § 7321 and 26 U.S.C. § 7701(11) authorize the "Secretary of the Treasury or his delegate" to seize any property subject to forfeiture by the United States and that Receiver is acting as a "delegate" so as to invoke the full panoply of the IRS's enforcement tools. (<u>Id.</u>)

  However, whether Receiver can act as a "delegate" for the Secretary of Treasury is irrelevant because Receiver need not rely on the Internal Revenue Service statutes to seize Defendant's assets. In the Court's earlier Order authorizing the receivership, the Court carefully delineated a series of steps that Receiver must take before seizing Defendant's property. First, the Receiver shall conduct an investigation to identify and locate Defendant's assets. (Order at 16.)

Then, "[u]pon identification of all Assets and Documents of, or in possession, custody, or under the control of the Receivership Defendant, <u>the Receiver shall file a request with the Court to have said Assets and Documents apply toward the Restitution Judgment</u> entered against the Receivership Defendant . . . ." (<u>Id.</u> (emphasis added))  After the Court determines that such assets belong to Defendant and should apply toward the Restitution Judgment, "the Receiver shall be directed and authorized . . . [to] [t]ake <u>exclusive custody, control and possession</u> of all said Assets and Documents . . . [and] [c]onserve, hold, and manage all receivership Assets . . . ." (<u>Id.</u> at 17 (emphasis added).)  As the Court's previous Order expressly delineated, Receiver need only file a request with the Court to have an asset apply to the Restitution Judgment.  It need not employ "certain legal tools" of the Internal Revenue Service.  Therefore, Receiver's request is **DENIED AS MOOT**.

Nevertheless, the Court **APPROVES** Receiver's First Interim Status Report because it is satisfied that Receiver has thoroughly investigated the financial status of Defendant's properties in compliance with the Court's Order Appointing Receiver.

<u>CONCLUSION</u>

For the aforementioned reasons, the Court **GRANTS** the Motion for Order Authorizing Sale of Personal Property by Private Sale (Dkt. # 2815);

17

**GRANTS** the Motion to Amend Order Granting Government's Motion to Appoint Receiver (Dkt. # 2816); and **GRANTS IN PART AND DENIES AS MOOT IN PART** the Motion for Order Approving/Authorizing Payment of Receiver's Fees and Expenses for the Period December 14, 2011 through March 31, 2013 and for Order Approving Receiver's First Interim Status Report (Dkt. # 2840).

        **IT IS SO ORDERED.**

        **DATED**: Las Vegas, Nevada, May 22, 2014.

_____
David Alan Ezra
Senior United States Distict Judge