IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | No. 2-05-CR-121-DAE-RJJ-1 |
| Plaintiff, | § | |
| v. | § | |
| ROBERT DAVID KAHRE, | § | |
| Defendant. | § | |

ORDER DENYING PRO SE MOTION FOR
EARLY TERMINATION OF SUPERVISED RELEASE

Before the Court is a Pro Se Motion for Early Termination of Supervised Release filed by Defendant Robert David Kahre ("Defendant" or "Kahre") on August 23, 2022. (Dkt. # 2980.) On September 6, 2022, the Government filed a Response in Opposition to Defendant's Pro Se Motion for Early Termination of Supervised Release. (Dkt. # 2981.) Having carefully considered the request, the Court **DENIES** Defendant's Motion for Early Termination of Supervised Release.

BACKGROUND

Kahre operated a massive conspiracy to avoid payment of payroll and income taxes, in which employees received their wages in gold and silver coins later exchanged for cash. United States v. Kahre, 737 F.3d 554 (9th Cir. 2013). Kahre also marketed this service to other contractors and charged an administrative

fee for their use of the system.  Id.  On August 14, 2009, a jury convicted Kahre of all counts charged, including one count of conspiracy in violation of 18 U.S.C. § 371, forty-nine counts of failure to pay employment taxes in violation of 26 U.S.C. § 7202, two counts of attempting to interfere with the administration of Internal Revenue laws in violation of 26 U.S.C. § 7212(a), four counts of attempting to evade or defeat tax in violation of 26 U.S.C. § 7201, and one count of wire fraud in violation of 18 U.S.C. § 1343.  (Dkt. # 2520.)

On November 17, 2009, this Court sentenced Kahre to 190 months' imprisonment to be followed by three years' supervised release.  (Dkt. # 2615.) The Court also ordered Kahre pay $16,060,104.72 in restitution to the Internal Revenue Service, joint and several with codefendants.  (Id. at 7-8.)  Kahre was obligated to pay not less than 10% of his gross monthly income.  (Id.)  Kahre's convictions and sentence were upheld in full on appeal to the Ninth Circuit. United States v. Kahre, 737 F.3d 554 (9th Cir. 2013).

On May 12, 2021, this Court granted Kahre's Emergency Motion for Compassionate Release from Incarceration after considering the record and the COVID-19 pandemic.  (Dkt. # 2977.)  Kahre was ordered released from the custody of the Bureau of Prisons and immediately began a term of three years supervised release.  (Id.)

As of September 15, 2022, Kahre has served just over fifteen months

of supervised release. Kahre seeks termination of his remaining nineteen months of supervised release, stating that since his release he has had a difficult time finding and retaining employment in Nevada. (Dkt. # 2980.) He reports that he was hired by the Hudson Group but terminated after two months due to his felony record. (Id. at 1) He states that he has applied "for over 80 available position with local and regional employers" but the same thing "has happened similarly with other employers, leading [him] to seek employment in other possible areas and states." (Id.) He believes that the slower pace of life in Montana and the job opportunities there for ex-felons present a promising chance to "better rebuild my life, career, and fulfill my obligation" to pay restitution. (Id.) Kahre claims he has "remained consistent with restitution payments while working" and complied with monthly check-ins with probation. (Id. at 6) In order to move to Montana for a fresh start, he asks for the early termination of supervised release.

       Kahre acknowledges that the Probation Office opposes his request for early termination of supervised release due to "inconsistent [restitution] payments, restitution amount, and employment status." (Id. at 2.) The Government likewise opposes Defendant's request for early termination of supervised release. (Dkt. # 2981.)

LEGAL STANDARD

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering the factors[1] laid out in Section 3553(a), "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). "It is defendant's burden to establish that he is entitled to the rarely-granted remedy of early termination of supervised release." United States v. Emmett, 749 F.3d 817, 824 (9th Cir. 2014). "Mere compliance with the terms of supervised release is what is expected, and without more, is insufficient to justify early termination." United States v. Boozer, No. 212-CR-00004-APG-EJY, 2019 WL 7666537, at *1 (D. Nev. Oct. 1, 2019).

ANALYSIS

Kahre advises the Court that he lost his job with the Hudson Group after two months due to his status as an ex-felon and states that "this has happened

---

[1] These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) deterrence; (3) protection of the public; (4) the need to provide the defendant with educational, vocational training, medical care or other rehabilitation; (5) the sentence and sentencing range established for the category of defendant; (6) any pertinent policy statement by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to victims. See 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4)-(7).

similarly with other employers." (Dkt. # 2980.) He believes he will be better able to find employment in Montana. (Id.) However, considering "the nature and circumstances of the offense and the history and characteristics of the defendant," such as the sophisticated, expansive scheme he operated and his inconsistency with his employment and restitution requirements, the Court finds that early termination is not in the interest of justice. 18 U.S.C. § 3553(a)(1), (e)(1).

        Kahre has not met even the low threshold of compliance with the terms of his supervised release. Kahre is obligated in his special conditions to pay restitution at a rate not less than 10% of his monthly gross income during his period of supervision. (Dkt. # 2615 at 8.) Kahre's first restitution payment was made in June 2022, more than a year after his release. (Dkt. # 2981 at 4.) And despite Kahre's allegation that he "remained consistent with restitution payments while working," he has made only two monthly restitution payments over the fifteen months since his release.[2] (Dkt. # 2980 at 6.) It further appears that Kahre has only been employed for the two months he worked Hudson Group, despite the standard condition of supervision that he maintain lawful employment. (Dkt. # 2615 at 7.) Kahre's lacking compliance with his employment and restitution

---

[2] Based on records from 5/12/2021 to 8/XX/2022. (Dkt. # 2981 at 4.) One of those monthly payments—for the month of June 2022—was technically composed of two smaller payments. (Id.)

conditions do not constitute conduct warranting the rarely granted remedy of early release. See 18 U.S.C. § 3553(a)(7) (identifying "the need to provide restitution to any victims of the offense" as a factor this court must consider); see also United States v. Fleeks, No. 2:20-cr-258-APG-BNW, 2020 U.S. Dist. LEXIS 230140, at *3-4 (D. Nev. Dec. 7, 2020) (denying early termination of supervised release where defendant "ceased making court-ordered restitution payments despite having sufficient funds to do so"). Furthermore, Kahre's interest in pursuing employment in Montana does not provide a basis for the termination of his supervised release. See United States v. Fleeks, 2020 U.S. Dist. LEXIS 230140, at *3-4 (denying supervised release where defendant merely sought to "pursue better-paying job opportunities" out of state); see also United States v. Girard, No. CRIM. 10-82, 2014 WL 1091225, at *2 (W.D. Pa. Mar. 19, 2014) ("Nor does the court view defendant's job opportunity in California as an extraordinary circumstance justifying early termination of supervised release.").

   Lastly, this Court's grant of compassionate release resulted in a substantial downward departure from the advisory sentencing guidelines. (Dkt. # 2977.) Further reducing his sentence would be inconsistent with "the sentence and sentencing range established" for the category of defendant. 18 U.S.C. § 3583(a)(4) (requiring the court to consider the sentence and sentencing range established for the category of defendant).

Although Kahre expresses his hope that a move to Montana would allow him to better support his family and pay his restitution, the Court believes that completing a longer term of supervised release appropriately reflects the seriousness of his offense, deters future criminal conduct, and allows him ample employment opportunity to made headway on his restitution obligation while in Nevada.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Pro Se Motion for Early Termination of Supervised Release.  (Dkt. # 2980.)

**IT IS SO ORDERED.**

**DATED**: Las Vegas, Nevada, September 19, 2022.

_____
David Alan Ezra
Senior United States District Judge